**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| KATHRYN CONWELL,<br><br>Plaintiff,<br><br>v.<br><br>MEDVET CALIFORNIA, INC.,<br><br>Defendant. | Case No.  25-cv-10261-BLF<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>[Re:  ECF 16] |

Plaintiff Kathryn Conwell ("Conwell") moves to remand this putative wage and hour class action to state court.  *See* Pl.'s Mot. to Remand, ECF 16.  Defendant MedVet California, Inc. ("MedVet")[1] removed the action to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  *See* Notice of Removal, ECF 1.  Conwell asserts that MedVet cannot show that the amount in controversy exceeds $5,000,000 as required for jurisdiction under CAFA.

The motion to remand is GRANTED as discussed below.

## I.    BACKGROUND

Conwell alleges that she was a non-exempt hourly employee of MedVet in California.  *See* Notice of Removal Ex. 1 ("Compl.") ¶ 4, ECF 1-1.  She claims that MedVet "had a consistent policy or practice" of violating the California Labor Code, and she seeks to represent a class of all current and former non-exempt hourly employees who worked for MedVet in California at any time within four years before the filing of this lawsuit.  *See id*. ¶¶ 11, 18-19, 28.

---

[1] The complaint names two defendants, MedVet for Pets, Inc., an Ohio corporation, and MedVet California, Inc., an entity of unknown form.  *See* Compl. ¶ 1.  The Notice of Removal states that the only proper defendant is MedVet California, Inc., an Ohio corporation.  *See* Not. of Removal ¶¶ 21-24.  MedVet for Pets, Inc. is a dba of MedVet California, Inc.  *See id*.

United States District Court
Northern District of California

Conwell filed this putative class action against MedVet in the Santa Clara County Superior Court in October 2025.  The complaint asserts eleven claims for relief:  (1) unpaid minimum wages under Cal. Labor Code § 1194; (2) unpaid overtime wages under Cal. Labor Code § 510; (3) damages for failure to provide meal periods under Cal. Labor Code § 226.7; (4) damages for failure to provide rest breaks under Cal. Labor Code § 226.7; (5) penalties for failure to pay vacation wages under Cal. Labor Code § 227.3; (6) penalties for failure to pay sick time under Cal. Labor Code §§ 245 and 246;  (7) penalties for failure to provide wage statements in violation of Cal. Labor Code § 226(a); (8) failure to reimburse for necessary business expenditures under Cal. Labor Code § 2802; (9) penalties for failure to keep required payroll records under Cal. Labor Code §§ 1174 and 1174.5; (10) penalties for failure to pay all wages due at termination under Cal. Labor Code § 203; and (11) violation of Cal. Bus. & Prof. Code § 17200.  Conwell has voluntarily dismissed the sixth and ninth claims with leave of the Court, leaving nine claims at issue in the case.  *See* Stipulation and Order, ECF 15.

MedVet removed the action to federal district court in November 2025, asserting jurisdiction under CAFA.  *See* Notice of Removal at 2.  Conwell moves to remand the action, challenging MedVet's ability to show that the amount in controversy exceeds the $5,000,000 threshold for CAFA jurisdiction.  *See* Pl.'s Mot. at 1.

## II.    LEGAL STANDARD

A defendant may remove a civil action from state court to federal court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  Under CAFA, federal courts have original jurisdiction over class actions when (1) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (2) the class has more than 100 members, and (3) any class member is a citizen of a State different from any defendant.  *See* 28 U.S.C. § 1332(d).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  If the plaintiff challenges the defendant's assertion of the amount in controversy, the defendant must prove by a preponderance of the evidence that the jurisdictional threshold is satisfied.  *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925

(9th Cir. 2019). "Because the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability, a removing defendant need not present evidence of what its ultimate liability will be – in many cases, the defendant presumably expects that figure to be zero." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (internal quotation marks, citation, and brackets omitted). Thus, it may be appropriate for the defendant to rely on assumptions grounded in the allegations of the complaint to establish the amount in controversy. *See id*. 808-09. "The district court's task is simply to determine if the defendant's reasoning and underlying assumptions are reasonable." *See id*. at 808 (internal quotation marks and citation omitted).

## III.    DISCUSSION

Conwell seeks remand based on her assertion that MedVet cannot show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. She does not challenge the other requirements for CAFA jurisdiction, that the class has more than 100 members and that the parties be minimally diverse.

Because Conwell disputes the allegation in MedVet's notice of removal that the amount in controversy exceeds the jurisdictional threshold, MedVet has the burden to show by a preponderance of the evidence that the jurisdictional threshold is satisfied. MedVet argues that it has met this burden with evidence regarding the number of class members at issue and their pay rates, combined with reasonable assumptions regarding the frequency of the alleged violations drawn from allegations in the complaint.

MedVet has submitted two declarations of its Vice President of Human Resources, Julie Brown, one in support of its notice of removal and the other in support of its opposition to the present motion to remand. *See* Brown Decl. ISO Removal, ECF 1-2; Brown Decl. ISO Opp., ECF 21-1. Ms. Brown states that during the putative class period, approximately 397 non-exempt hourly employees were employed in California. *See* Brown Decl. ISO Removal ¶ 8. Approximately 153 of those employees separated from employment during the putative class period. *See id*. The pay rates of employees varied, with 99% of employees earning between $20 and $50 per hour. *See id*. ¶ 9; *see also* Brown Decl. ISO Opp. ¶ 6. The average hourly rate of pay

for putative class members was $31.46.  *See* Brown Decl. ISO Opp. ¶ 6.  However, MedVet uses the lowest and therefore most conservative hourly rate of $20 in its calculations offered in opposition to Conwell's motion to remand.  *See* Def.'s Opp. at 5, ECF 21.

Conwell does not dispute MedVet's evidence regarding the number of non-exempt hourly employees, nor does Conwell dispute the use of a $20 hourly rate.  The parties' disputes center on the calculations MedVet makes using those figures along with assumptions drawn from the complaint regarding the violation rate for each type of alleged misconduct.  The parties do not address the claims in the same order in their briefing.  For ease of reference, the Court takes up the claims in the order presented in the complaint.

### A.    Unpaid Minimum Wages (Claim 1)

Claim 1 is for unpaid minimum wages under California Labor Code § 1194, as well as liquidated damages in an amount equal to the unpaid minimum wages under California Labor Code § 1194.2.  *See* Compl. ¶¶ 39-47.

MedVet submits evidence that the approximately 397 putative class members worked approximately 33,390 workweeks during the relevant time frame.  *See* Brown Decl. ISO Removal ¶ 10.  Based on allegations in the complaint that MedVet "required Plaintiff and the Employees in the Class to perform work off the clock" and "had a consistent policy" of failing to pay employees for hours worked off the clock, and that this was a "uniform pattern of unlawful wage and hour practices," MedVet assumes that 100% of the putative class members performed work off the clock.  MedVet estimates 30 minutes of unpaid wages per week.  Applying the hourly rate of $20, MedVet calculates that Conwell is seeking $333,900 for unpaid wages under § 1194, plus $333,900 in liquidated damages under § 1194.2, for a total of $667,800 for Claim 1.

Conwell asserts that MedVet errs in assuming a 100% violation rate and in applying a regular hourly rate of $20 to the calculation of the liquidated damages.  She argues that an assumed 25% violation rate would be more appropriate and, based on her calculations, asserts the amount in controversy for Claim 1 is $147,750.75.

In the Court's view, a violation rate of 50% reasonably can be assumed based on the complaint's allegations that MedVet had a consistent policy of requiring work off the clock.

"District courts have found, however, that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation." *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (collecting cases). This Court finds the estimate of 30 minutes of unpaid wages per week to be reasonable given the alleged pervasiveness of the demands to work off the clock. Using the regular hourly rate of $20 to calculate the wage claim under § 1194, the Court finds the reasonable value of that claim to be $166,950 ((33,390 x .5) x ($20 x .5) = $166,950).[2]

The Court uses the average California minimum wage rate of $15.40 supplied by Conwell to calculate the liquidated damages claim under § 1194.2. *See Martinez v. Combs*, 49 Cal. 4th 35, 48 n.8 (2010) ("The 'liquidated damages' allowed in section 1194.2 are in effect a penalty equal to the amount of unpaid minimum wages."). The Court finds the reasonable value of the liquidated damages claim under § 1194.2 to be $128,551.50 ((33,390 x .5) x ($15.40 x .5) = $128,551.50).

Accordingly, the Court finds that a reasonable estimate of the amount in controversy for Claim 1 is $295,501.50 ($166,950 + $128,551.50 = $295,501.50).

### B.    Unpaid Overtime Wages (Claim 2)

Claim 2 is for unpaid overtime wages under California Labor Code § 510, which provides that employees are entitled to payment in the amount of one and one-half times their regular rate of pay for all overtime hours worked and twice their regular rate of pay for all doubletime worked. MedVet assumes that *all* putative class members worked more than 8 hours a day, and that *all* putative class members worked 30 minutes per week of unpaid overtime or doubletime. Based on those assumptions, MedVet calculates the class claim of unpaid overtime to be $125,210 and the class claim of unpaid doubletime to be $83,470, for a total of $208,680.

---

[2] The Court uses the $20 regular wage rate because the parties appear to agree that is the appropriate rate for calculating the claim for minimum wages under § 1194. It may be that the minimum wage rate should be used instead. *See Lopez v. Bio-Reference Lab'ys, Inc.*, No. 2:21-CV-02063-KJM-DB, 2022 WL 1744993, at *4 (E.D. Cal. May 31, 2022) (calculating § 1194 claim using state minimum wage rather than regular rate of pay). However, the use of the minimum wage rate instead of the $20 regular wage rate would not affect the outcome of the motion to remand.

United States District Court
Northern District of California

Conwell argues that MedVet's assumption of a 100% violation rate is even more unwarranted with respect to the overtime claim, because there is no evidence that all of the 397 putative class members were full-time employees. The lack of evidence on this point is puzzling given that MedVet easily could have established how many of the 397 putative class members worked full-time and how many (if any) worked part-time. Because MedVet has not done so, the Court must proceed in something of a vacuum. It would be inappropriate to simply zero out Claim 2 for lack of sufficient information, because the complaint's allegations suggest that a substantial number of employees were not paid for overtime and doubletime. Conwell suggests reducing MedVet's calculation by half, which the Court finds to be an appropriate compromise between MedVet's failure to support its figures and the complaint's allegations that MedVet failed to pay overtime and double time wages earned by putative class members. The Court finds that a reasonable estimate of the amount in controversy for Claim 2 is $104,340 ($62,605 in unpaid overtime + $41,735 in unpaid doubletime = $104,340).

Accordingly, the Court finds that the amount in controversy for Claim 2 is $104,340.

### C.     Failure to Provide Meal and Rest Breaks (Claims 3 and 4)

Claim 3 is for failure to provide meal breaks and Claim 4 is for failure to provide rest breaks. California law requires employers to provide timely meal and rest breaks, generally meal breaks of no less than 30 minutes for each work period of more than five hours, and rest breaks of no less than 10 minutes for each work period of more than four hours. *See* Cal. Lab Code §§ 226.7(b), 512(a). The employer must compensate an employee for one additional hour of work at the regular rate of pay for each qualifying workday when a violation occurred. *See* Cal. Lab. Code § 226.7(c).

MedVet assumes that all putative class members worked shifts of sufficient length to qualify for meal and rest breaks, and that class members suffered 3 meal period violations and 3 rest break violations per week. Based on those assumptions, MedVet calculates that Claims 3 and 4 give rise to potential liability in the amount of $4,006,800.00. MedVet arrives at that figure as follows: $20 (hourly rate) x  33,390 (workweeks) x 6 (3 missed meal periods and 3 missed rest periods).

6

United States District Court
Northern District of California

Conwell points out that these calculations suffer from the same defect as MedVet's calculations regarding overtime – there is no record evidence that that all of the 397 putative class members worked shifts long enough to qualify for meal and rest breaks.  That evidence is within MedVet's control, but for unknown reasons MedVet chose not to offer it.  The Ninth Circuit has rejected unsupported assumptions regarding meal and rest periods such as those offered here.  *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020).  In *Harris*, the Ninth Circuit found the defendant's assumptions regarding meal and rest period damages unreasonable where the defendant "failed to provide any evidence to support its assumption that all 442 Hourly Employee Class members . . . worked shifts long enough to qualify for meal or rest periods."  *Id*.

Conwell suggests a 20% violation rate based on an assumed five-day workweek and 1 missed meal period and 1 missed rest break.  Other district courts in this district have taken such an approach based on pattern and practice allegations and an absence of evidence allowing more precise calculations.  *See, e.g., Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods.").  This Court will adopt Conwell's proposed figures, resulting in potential liability of $1,335,600 based on the following calculation:  $20 (hourly rate) x  33,390 (workweeks) x 2 (1 missed meal period and 1 missed rest period) = $1,335,600.

The Court finds that a reasonable estimate of the amount in controversy for Claims 3 and 4 is $1,335,600.

### D.    Failure to Provide Wage Statement (Claim 7)

Claim 7 seeks penalties for failure to provide wage statements in violation of Cal. Labor Code § 226(a).  Employees may recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)."  Cal. Lab. Code § 226(e).  A one-year statute of limitations applies to a violation of § 226(a).  *See Blackwell v. SkyWest Airlines, Inc*. 245 F.R.D. 453, 462 (S.D. Cal. 2007).

7

MedVet asserts that there are 112 putative class members who could claim $2,750 each. *See* Brown Decl. ISO Removal ¶ 8. Based on that assertion, MedVet contends that its potential liability for this claim is $308,000. Conwell does not challenge this figure for purposes of the present motion. *See* Pl.'s Mot. at 10.

Accordingly, the Court finds that the amount in controversy for Claim 7 is $308,000.

### E.    Business Expenditures (Claim 8)

Claim 8 is for failure to reimburse business expenditures in violation of California Labor Code § 2802, which provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]" Cal. Lab. Code § 2802(a).

The complaint alleges that "[e]mployees incurred necessary expenditures in the performance of their job duties for Defendants, namely personal cell phone usage, which was necessary to perform their duties under Defendants' employ." Compl. ¶ 82. The complaint also alleges that, "From four (4) years prior to the original filing of this lawsuit and continuing to the present, Defendants consistently failed to reimburse Employees for these necessarily incurred business expenses." *Id*. Based on those allegations, MedVet assumes that each employee incurred $15 per week in unreimbursed expenses including cell phone expenses. MedVet multiples the assumed $15 in expenses by 33,390 workweeks to conclude that the amount in controversy on this claim is $500,850.00.

MedVet provides no explanation whatsoever as to how it arrived at the assumption that *all* employees incurred $15 per week in cell phone and other expenses. MedVet cites *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1137-38 (N.D. Cal. Dec. 31, 2020), arguing that the court in that case approved a $50 reimbursement figure for cell phone use. In *Anderson*, however, the plaintiffs alleged specific facts regarding the employer's requirements that they be available by cell phone, which are not present here. It is not even clear that all putative class members had work-related cell phone expenses, let alone expenses in the amount of $15 per week. The Ninth Circuit has made clear that "a 'pattern and practice' of doing something does not necessarily mean always doing something." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198-99 (9th Cir. 2015).

8

The Court finds that this is a rare instance when zeroing out a claim might be warranted based on the defendant's failure to provide any bases for its calculations. With respect to the other claims at issue in this case, MedVet identified *some* factual basis for its assumptions and calculations. Here, it appears that MedVet plucked the proposed $15 per week and 100% violation rate out of thin air. "[A]assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. "[I]f a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate for a district court to assign that claim a $0 value." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022).

Conwell does not ask the Court to zero out the business expenses claim, but instead suggests the Court assume that class members incurred $5.22 per week in cell phone expenses. The Court adopts Conwell's proposal based on her allegations that the putative class members incurred some expenses and the Court's reluctance to take the extreme step of valuing the claim at $0 for purposes of the jurisdictional analysis. Using Conwell's figure, the amount in controversy for this claim is $174,295.80 ($5.22 per week x 33,390 workweeks = $174,295.80).

Accordingly, the Court finds that the amount in controversy for Claim 8 is $174,295.80.

### F.    Waiting Time Penalties (Claim 10)

Claim 10 is for waiting time penalties under California Labor Code § 203, which provides that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). The complaint seeks 30 days of wages for the putative class members. *See* Compl. ¶ 92. The statute of limitations for this claim is 3 years. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010).

MedVet submits evidence that there are approximately 153 putative class members whose claims fall inside the 3-year limitations period. *See* Brown Decl. ISO Removal ¶ 8. MedVet argues that a 100% violation rate may be assumed for this claim, because all putative class members who are not time-barred likely seek penalties for failure to pay wages upon separation.

While that portion of MedVet's argument is persuasive, MedVet assumes that each putative class member eligible to seek waiting time penalties worked full-time. MedVet calculates the statutory penalty for those individuals as follows: $20 wage rate x 8 hours x 30 days x 153 putative class members = $734,400.00.

Conwell points out that, once again, MedVet has not offered any basis for assuming that all putative class members worked full-time. "Under section 203, an employee's rate of pay must be calculated as a daily figure, which can then be multiplied by the number of days of nonpayment for a maximum of 30 days." *Benitez v. Hyatt Corp.*, 722 F. Supp. 3d 1094, 1101 (S.D. Cal. 2024). (internal quotation marks and citation omitted). "Courts may use eight-hour workdays when calculating penalties owed to full-time workers but must otherwise make the appropriate downward adjustment." *Id*. at 1102 (internal quotation marks and citation omitted). Knowledge of the full-time or part-time employment status of the putative class members is within MedVet's control. MedVet would have had to provide that information as to only 153 former employees in order to give the Court a concrete basis for determining the amount in controversy for this claim. Because MedVet has elected not to do so, Conwell asks the Court to zero out this claim for purposes of the jurisdictional analysis.

The Court declines to value this claim at $0. Based on the allegations of the complaint as a whole, it is reasonable to assume the putative class members will be seeking a substantial amount in waiting time penalties in this case. As with the claim for meal and rest breaks, for which MedVet also failed to provide critical information regarding the putative class members' shift lengths, the Court will assume a 20% violation rate. The Court therefore will value the claim at 20% of the figure calculated by MedVet using a 100% violation rate, or $146,880.

The Court finds that MedVet has established at most that the amount in controversy for this claim is $146,880.

### G.     Attorneys' Fees

Finally, courts consider attorneys' fees when ascertaining whether a complaint meets the amount-in-controversy requirement under CAFA. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). MedVet suggests that the Court use a benchmark of 25%

United States District Court
Northern District of California

percent of the total damages, because the Ninth Circuit has found that percentage to be reasonable in class action cases. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Although Conwell objects to use of the 25% benchmark in her papers, Conwell's counsel agreed at the hearing that use of the benchmark would be appropriate in this case. Because the jurisdictional threshold for CAFA will not be satisfied even if the Court applies the 25% benchmark suggested by MedVet, the Court need not devote further discussion to an appropriate calculation of attorneys' fees here.

The aggregate amount in controversy of the claims discussed above is $2,364,617.30. For purposes of the jurisdictional analysis, the Court finds that 25% of that amount would be a reasonable attorneys' fees award. The Court therefore values the claim for attorneys' fees at $591,154.33 ($2,364,617.30 x .25 = $591,154.33).

**H.    Summary[3]**

In summary, the Court finds that MedVet has established the following amounts in controversy for purposes of the jurisdictional analysis under CAFA:

| | |
|---|---|
| Minimum Wages (Claim 1): | $295,501.50 |
| Overtime Wages (Claim 2): | $104,340 |
| Meal and Rest Breaks (Claims 3 and 4): | $1,335,600 |
| Wage Statement (Claim 7): | $308,000 |
| Business Expenditures (Claim 8): | $174,295.80 |
| Waiting Time Penalties (Claim 10): | $146,880 |
| Attorneys' Fees: | $591,154.33 |
| Total Amount in Controversy: | $2,955,771.63 |

The total amount in controversy established by MedVet, $2,955,771.63, is well below the jurisdictional threshold of $5,000,000. Accordingly, Conwell's motion for remand is GRANTED.

---

[3] The parties have offered argument on Claims 1, 2, 3, 4, 7, 8, and 10. They have not addressed Claim 5, seeking penalties for failure to pay vacation wages under California Labor Code § 227.3. Claims 6 and 9 have been dismissed, as noted above.

United States District Court
Northern District of California

## IV.  ORDER

(1)    Plaintiff's motion to remand is GRANTED.

(2)    The Clerk SHALL REMAND this case to the Santa Clara County Superior Court.

(3)    All motions, dates, and deadlines pending before this Court are TERMINATED, including all trial and related dates.

(4)    This order terminates ECF 16.

Dated:  June 24, 2026

_____
BETH LABSON FREEMAN
United States District Judge

12